Your Honor, the first case is 212-717, People's State of Illinois v. Omarion P. Jones. On behalf of Mr. Jones, Mr. Jack Hildebrand, on behalf of the people, Mr. David Abramoff. Good morning, Mr. Hildebrand. Are you ready to proceed? May it please the Court, my name is Jack Hildebrand and I'm representing Omarion Jones in this case. There was only one African-American juror that was qualified to sit on this jury. And the State excused that juror in violation of Batson. Once a prima facie case is established, the State then is required to provide a specific bias about that juror. What's our standard of review with respect to a Batson challenge? Well, I think that's because it's a fundamental error, you know, structural, that it would be reviewed and a constitutional review, it would be reviewed and over. Okay, go ahead. Well, so what was the specific bias explained by the prosecutor in this case? Well, there wasn't. Let me start that again. Isn't a matter of fact that the Court is looking at the facts and it's a question of credibility, you know, the trial, isn't the trial court judging the credibility of what the State is saying, what the juror is saying? I mean, isn't it de novo review? Yes. Because it's a question of law. Yes, I understand. Do we have the privilege and the benefit of seeing and hearing what the trial court saw in here with respect to the State to determine whether or not the State was purposely trying to or intentionally trying to violate this defendant's constitutional rights? Sure. We had a transcript. But more importantly... But doesn't the mistake have to be one that, do we have to look whether it's accidental or whether it's intentional at this level? No, I don't think you can ever, you ever, ever have to prove it's intentional. It just, you have to look at the circumstances of the case and decide whether it appears to be racially motivated. But doesn't Batson, Batson requires us to, you to show that it was based upon an improper pretext in dismissing this juror. Do, can we agree on that? Yes, I mean, that's one way to find that it was purposeful discrimination if it's apparent that it was pretextual. And it's interesting because you noted that, isn't the judge supposed to analyze what the prosecutor says about why it dismissed this jury? That never happened in this case. Wasn't there a big long discussion with the prosecution where the prosecution indicated to the judge why she did what she did? Yes, and that was because the judge prevented, unfairly prevented the prosecutor from questioning the juror. Based upon an objection by the defendant, defense attorney. Correct. But did, after that particular objection and the court's ruling, did the defense try to ask any other questions that would relate to the problem or go forward? Did the defense? Did the state? No, the prosecutor just gave up. I mean, when, when an objection is sustained, that doesn't mean you can't ask any more questions. That, that excuse is just totally unacceptable. The prosecutor made a mistake. I don't know what the prosecutor was doing because everybody knows that if an objection is sustained, you don't pack up your bags and go home. I mean, that's, that's just. It was an objection that was clearly about the religious aspect of, of the questioning, correct? He, he asked her if it was a particular religion when she had already said it was Christianity. She belonged to a Christian church, taught the Bible. So that wasn't going to elicit any information that the prosecutor gave. I think if you look at it, I mean, realistically, you know, the inference is not, not whether it's a particular religion, Christianity, Muslim, whatever. It was whether it's a particular denomination of Christianity, which perhaps would be more inclined to have a belief that we're not supposed to judge people. It's up to God to judge people. I mean, that's a rational basis for a prosecutor to ask some questions about, isn't it? Well, that had already been answered as well. She stated that it was not denominational. So it should, it shouldn't, it can't be gone into any, any further. Well, it could, sure, it could go in as far as the prosecutor wanted to. The defense counsel was perfectly okay with that. But the prosecutor ultimately said, I dismiss this person because of religious questions. No, no. She never said that? That, that is, that is exactly what I'm trying to say is the judge never analyzed what the prosecutor said. Well, didn't the prosecutor say she's very involved in church, some things before that. That certainly gave us reason to go into that area. I have no problems with that. And I don't think that the defense counsel had any problems with that either. And, you know, if that's true, there was nothing preventing the prosecutor from going into that. But remember, the judge did not evaluate what the prosecutor said. Instead, the judge came up with his own subjective, unsolicited reason why. Well, you're saying, but the trial court did say something. And if that relates to the religious aspect, why is that something that the trial court came up with on its own? Well, the trial court said that the state excused her because Barnett could not be fair due to her religious beliefs. And that's contradicted by the record. Well, I thought that it wasn't fair so much as it was she was deeply rooted in her religious beliefs. But where is that, where is, I mean, did the trial court actually say unfair or fair, was fair in that? Yes. The trial court said that that's why the state excused her, because she couldn't be fair due to her religious beliefs. Counsel, let me ask you, did you read the case, People v. Wiley, that your opponent cited? Yes. Tell me, how do we distinguish this case from Wiley? Well, first of all, we don't even have to get to Caitlin Lachance to rule on the bad scenario. That's just icing on the cake, so to speak. That's just something that we can look at if we want to make further argument. But that's not necessary for this court to decide whether or not a Batson violation was made. And in Wiley, basically that court says you look at what the prosecutor states its reasons for dismissing. And here, that never even happened. The judge never looked at what the prosecutor stated. Instead, the judge came up with its own reason why. Well, if we look at it de novo, who cares? You're arguing for de novo review here, and if we look at it de novo, who cares? We can look at what the prosecutor said, not what the trial court said. Okay. If we look at it de novo, why was she dismissed? Why can't she sit as adjourned? Just because she's religious? And if religion and denomination and all that stuff is really important to the state, when LaChance was questioned, why didn't they ask her, what's your denomination? Now, what is your church affiliation? For all we know, she was going to the same church that Barnett went to. You don't see a varying degree there between someone who goes to church and someone who is married to the pastor of the church? No. I mean, would that make her unfair? I mean, what would be the basis? We're not talking about a challenge for cause. We're talking about a prosecutor looking at a juror and saying, you know, she may say that she can do this, she may say she can sign a guilty verdict, but I'm, you know, based on my understanding of people's religious beliefs and this, that, and the other thing, I really don't want someone who's super religious on this jury. I don't want someone who's super involved in a Christian church on this, because I know that many Christians feel that it's not their job to judge other people, that it's God's job to judge other people. And that's what the trial court said. That's what the state talked about when it was challenged on the Batson. The state talked about all this religion and the religious aspect. It mentioned it several times. And certainly religion and a religious aspect is not race-based, correct? No. No, it's not. But first of all, the prosecutor, that is not the prosecutor's explanation. And if we're looking at this de novo, we have to look at the prosecutor's explanation and decide whether that's pretextual, regardless of whether, wherever the judge came. That's de novo review. We're still, we have to look at it. What you're saying is the prosecutor said nothing about religion? I thought that even in your brief, there's an explanation that because she was non-denominational, he was not sure what her basis would be, and he wanted to ask her these questions, and he was shut down. Maybe he made a mistake and he could have asked another question. But didn't he ask her about her religion before he excused her? I'm not sure what you're getting at. I agree with what you first said. That's exactly what the prosecutor said. Well, then what's wrong with that? If the prosecutor is doing it because of a concern about her deeply rooted or her religious beliefs, why is that a Batson problem? And why isn't that a sufficient explanation? Because it's pretextual. Because the prosecutor could have asked her about all those things. Nothing prevented her from asking those things, and the court did nothing to prevent the state from asking those things. The state on its own prevented itself by just saying, we're dismissing her. Okay, and as Justice Burke has said, so the prosecutor made a mistake. How is that a Batson violation? Because it's pretextual. It's pretextual. And you don't think that the standard is any different than DeNovo. I mean, should we judge or look at what the court did and determine whether it was clearly erroneous? No, I think the court can reevaluate that. But in a DeNovo review, you have to reevaluate it in light of Batson. And what this court has to do, then, is look at the explanation that the prosecutor gave for why it dismissed her. And that explanation. We should determine whether it's pretextual without regard to what the trial court said. Do you see any cases that say that this is DeNovo review? Because there are some appellate court cases that say that it's a clearly erroneous situation, which makes a little more sense to me. Because you've got a judge there looking at the prosecutor, seeing what happened, listening to the prosecutor's explanation, and then making a judgment call based on what the prosecutor is saying as to whether or not it's pretextual. Right. And not a situation where we're reading a cold record and we're determining whether it's pretextual. I think when you have constitutional violations, typically that is a cause for DeNovo review. I'm not sure about the... Did you cite a case for standard of review on this? Yes, I'm sure I did. Cited that it's clearly erroneous. I don't see how the standard of review would really affect this because it was clearly erroneous. It was absolutely wrong. And in fact, not only was it wrong, the judge never evaluated the prosecutor's reason. So the judge didn't even exercise any discretion because it just came up with its own reason. Before your time runs out, let's go to the six-person jury argument. And I know that you're making an argument of self-representation as well. Let's talk about the six-person jury argument. Okay. How is the fact that the court said you don't have a right to a six-person jury, how did that prejudice the defendant? Well, he had a right to waive that. You know, if he had asked for a two-person jury, I could see why a judge might want to say, you know what, I'm not going down that road. Two's not enough. Or if you have a case with really complex issues, a whole bunch of really complicated issues, I could even see a judge saying, you know what, I'm not going to let you waive 12 in favor of 6 in this particular case because these issues are so complicated. I think we're going to need 12 in order for you to have a fair trial. But in this case, there was no reason for him not to have a six-person jury. This was a simple case. I mean, the victim, the son of the victim came in and said the defendant was in the house. I fought with the defendant. He identified the defendant at trial. The defendant came in, said, yeah, I was there, but I didn't kill anybody. So it's kind of like a he said, she said case. How would six people help him? Pardon me? How would a six-person jury have helped him in this case? You can't prove that it would. Just like in those cases. Don't you have to, though? No, you don't. It's just like in those cases where a person gets a six-person jury and he didn't waive 12. Well, a person has a fundamental right to a jury of 12, and they have to raise, they have to waive that. A six-person jury, you're saying a person has a fundamental constitutional right to a six-person jury? He has, if that is taken away from him unfairly, if the judge abuses his discretion to not give him a six, how is it different from a person who gets a jury trial of six but didn't waive 12? It's not a constitutional right to 12. The constitutional right is to a jury trial of 12. Well, Matthews. Not 12. Oh, yeah, Matthews. It's a statutory right. Matthews and Bragg, some of those cases talk about a constitutional fundamental right to a 12-person jury. And that right of a 12-person jury is not in our Constitution. It's in our statutes. It's in 115-1 or 115-4 or 725. I'm just trying to get my head around the fact that Dockery says that it's up to the court in its discretion to grant a six-person jury if a defendant requests it. Now, you're telling me that if a defendant requests it, the court has to grant it because it's a right of the defendant. The court has to grant it unless there's a good reason not to. That's not what the case that Justice Burke is citing says. The judge can. It doesn't say the judge has to. There's a difference. Although we often say shall, it doesn't mean shall. There's never been any assessment of this language. The judge has discretion. That's right. And this defendant is going to ask to represent himself. He is going to be in front of a jury by himself. Right. Doesn't he have a better chance with 12 people? The state might have a harder time convincing 12 than it would six. I don't know if that's true or not. Why would the judge put him in that situation? Because he wanted to waive that, and he has a right to waive that. And the judge has to use his discretion. Right. And what I'm saying, what my argument to that is that, well, first of all, the judge didn't exercise discretion. Even if he had, he should have given it to him because there's no reason not to. Well, you're saying that discretion is you have to do it. The judge had to. If there's no good reason not to do it. Maybe the judge perceived there was a good reason. That being the state, it might be easier for the state to convince six than it would be to convince 12, and the defendant would have a fairer shot if he represented himself. Is there a problem? Are you saying the trial judge has to say that on the record so that you know what the answer was? I think that the record has to reflect that the judge exercised some discretion or there's some basis for it. Are you saying, though, that the defendant doesn't have to establish prejudice? No. Okay. No, because there is no difference to me. There's very few cases on this. But there's no difference to me. If you ask for 12 or you get it, you get six, but you didn't waive 12, you don't have to show prejudice. How could you show prejudice? You still got a jury trial, just not with the number that you wanted. And in a case like this that we have here, how can he complain? He wanted six, but he got 12. How can he possibly show prejudice when he still got a jury trial just without the number of jurors that he requested, just like in the cases where you don't have to show prejudice? I don't see any difference in that. Does people versus where doesn't say that the burden is on the defendant to prove that prejudice resulted from his failure to have a? It does say that, but that's just wrong. That's wrong. Okay. And, you know, if this was error, if the judge committed error by not allowing the sixth person, whenever we have error and it's not structural, which I think this is considered to be structural because they're not requiring prejudice, but even if it wasn't structural, then isn't it the burden of the state then to show that the error was harmless? If this isn't structural, asking for the sixth. And the state didn't make any harmless error argument here. So how can it establish its burden? Well, the fifth district in the case you cite, Matthew, said that prejudice is presumed in that case because the right to a 12-person jury is a fundamental essential feature of a substantial constitutional guarantee. Are you telling me that a six-person jury is a fundamental essential feature of a substantial constitutional guarantee? Yes, because along with. . . How about a five-person jury or a seven-person jury? Yes, if it's. . . Or a four-person. . . How about a one-person jury? If a court believes that that in its discretion would allow that, then yes, he does have a right. Well, wasn't there just some legislation proposed on Springfield with respect to six-person jurors? I believe for civil cases that's probably the way it's going to go. So I guess I'm listening to your conversation with Justice Burke and imagining a person got a one-person jury request and got one, and the judge says in an exercise of discretion, this is a simple case, I'm going to give you one. You're going to be standing in front of me, I can guarantee it, saying that judge was silly. It's a murder case. It's not a simple case. So what do you want the judge to say? Or do you just want an argument so that you can make one on behalf of your defendant? Justice Hutchinson, I would have to say that I would not be making that argument. Well, I can see people would say the judge is taking this very lightly. He's not understanding the constitutional importance of a jury. This is a simple case. Right. Well, I guess then the argument would be that the judge abuses discretion. Okay. I mean, if the judge doesn't exercise any discretion, like in this case, because he says six persons are unconstitutional, when you have a situation where there's no exercise of discretion, I think what you have to look at is first what's the wrong decision made? Because if he asked for 1,000 jurors and the court said you don't have a right, you only have a right to 12 because anything else is unconstitutional. There would be no discretion. But the court made the right call anyway because, obviously, to give somebody 1,000 jurors is ridiculous. So first you have to look at was the right decision made when there's no exercise? And in this case, was the right decision made? No, because there's no reason why he shouldn't have gotten a six. And once you decide that there's an error, then you move on to the next level. Then isn't it your burden to prove that the prejudice resulted from that error? How could anybody prove prejudice in that situation? It's impossible to say that, you know, he still got his jury trial. How can you say he was prejudiced? That's why prejudice should be presumed in this situation just like it is in that other situation. Would you care to wrap up? Sure. Did you want me to go into the third issue about self-representation? No, that's okay. You can do that on your rebuttal if you need. Okay. Well, I would just ask that the court reverse these convictions and remand for a new trial because of the Batson violation, because of the six-person jury violation, the violation of self-representation, or alternatively to vacate the excess convictions as argued in number four. Thank you, Mr. Hildebrandt. Mr. Bernhardt. Good morning, Your Honors. Good morning. I just want to clarify one thing. During your discussion, you were talking about the judge. He claimed he didn't have any discretion in making a jury less than 12. Right. Didn't he say, oh, you can't have it? Yeah, he says that constitutionally or statutorily, I can't do that. He was wrong, correct? He was wrong under DACRI. But the fact is, and Your Honors have discussed it, you know, that the logic is it's a lot easier to convince one out of 12 than one out of six. And I think if a defendant came in and only had six jurors, he would come in and say, listen, he would argue the same thing that I'm arguing right now. Also, I think that is logic, that it isn't prejudicial in that sense. The other thing is. Well, Mr. Hildebrandt said he doesn't need to show prejudice, that it's. Well, I think it does show prejudice. And I think he does have to show, the defendant does have to show prejudice. And also, if you look at the trial overall and the overwhelming evidence, it would show that this clearly would convince a six jury. You know, a six-person jury rather than a 12-person jury. So you're looking at all of the evidence overall? Right. You know, I'm looking at the evidence that there's no prejudice there, that the trial was fair. And I'm also looking at the fact that when you think logically, it's easier to convince one out of 12 than one out of six. And that's a reason why, you know, you have, a defendant has an absolute right always to a 12-person jury. You're conceding that the trial court abused its discretion by not exercising its discretion, correct? Well, I would say he's probably, because he didn't know he had any discretion, that that's true. But the fact is that there's no prejudice that came out of it. Is that why you, as counsel said, you didn't deal with any harmless error type arguments? Well, I think when I'm saying that the defendant doesn't argue in a number of my arguments that the evidence was close, that's harmless error. I discussed the fact that the evidence was overwhelming. And when you read the record, I think that's clearly a DNA we have. One of the victims, it's just a very good factual case for the state. Let's move to Bassan argument, if you can. What is the standard of review? Well, it's clearly erroneous. That's what Bassan says. That's what Hudson says. There's a number of cases that state that. And the reason for that is, as your honors know better than I, body language. You can look at a juror, a veneer man, and they can say one thing, but their body language can show another thing. A prosecutor, a defense attorney, they don't have to look at the overall picture, what's going on, and the person's body language and everything else. And I think that's why we don't have the normal review on this kind of thing. It's just looking whether it was clearly erroneous. And it wasn't. It's clear this prosecutor made a mistake. It's on the record. The prosecutor was African-American also. But she said, you know, I would have gone on, but I understood that I couldn't go into the religious stuff at all. She explained it. So you're saying it was accidental, not intentional? Pardon? You're saying it was accidental, not intentional? Right. It wasn't intentional. And then she gives another race-neutral reasons. Well, if you've already said, okay, you're released from jury service, and then you bring her back and ask her more questions, there is that possible, you know, question of, well, is she going to resent that, you know? She could have asked for a sidebar, couldn't she? Pardon? She could have asked for a sidebar. She could have. She made a mistake. But I don't think this is a mistake that has really harmed the defendant at all. The jury was certainly, you know, there's nothing that would show that there was any prejudice out of the jury. It was just an overwhelming case and overwhelming evidence. But it certainly was race-neutral. You know, her reasons, as Judge Burke said, you know, there's a lot of reasons why people do not want to judge others as Christians. And she wanted to dwell into that. And she thought the judge wouldn't let her dwell into that. And so she decided that, hey, you know, I can't take the chance. And she explained that to the judge. Now, the judge wasn't giving every reason on the record why he found that to be race-neutral. He just made a general statement about it in the discussion. Did he advocate for her as the defense submits? I don't think so. I don't see that on the record. Didn't he give the argument about the basis for the challenge? Well, I think that was part of his holding. And he understood what the prosecutor was saying. It may not have been the most articulate way, the way she was explaining it, but he understood it, that, you know, there are biases. Judge Burke explained it much better than he did. But I think they were coming to the same conclusion. Are there any cases that you're aware of that say in this situation, and I'm talking about other than Batson, but in this situation a judge should parent, you know, parent the language of the state, look at the prima facie case and make a decision, or, again, are we talking about a judge's discretion? We're talking judge's discretion. There's no cases out there that I've ever read like that. And we all realize, you know, you're in the middle of a jury selection. They're not thinking about laying every piece down. This isn't a trial or holding on some motion. This is jury selection where it's more of an art than a science in many ways. You started going into prejudice a little bit in this argument. And if we were to determine that the exclusion of this juror was pretextual on racial grounds, even if the exclusion of one veneerman would result in reversible error, would it not? Well, I don't agree with that. I think the evidence in this case had meant that there was not a source. Doesn't People v. Britt say if you exclude one? I'm sorry. People v. Britt, that case, doesn't it say that the exclusion of one juror based on race is unconstitutional and reversible? You know, Your Honor, I can't. I don't remember that, so I really couldn't give you an answer to that. But, again, there were race-neutral reasons. I think it clearly shows that this person wasn't concerned about or that this prosecutor wasn't concerned about the race of the person but the religion. And you can see this potential juror.  She helped run the church. In her free time, what did she do? She read the Bible. This is a woman whose life was guided by her faith. Now, she can say, yeah, I may be able to judge, but maybe she can't. You know, we had a right to go into that through a series of kind of missteps. She wasn't able to, you know, really vet this juror, but that's not intentional. Was Juror LaChance's life guided by her faith also? I don't think it was the same thing. She did some missionary work and went to church, but she wasn't helping to run the church. She wasn't actually part of the church. Her husband wasn't a pastor. She was a little bit shy. But, see, that's the same thing when you talk about whereas. You look at one part of a person's personality, but there's other traits. And that's why I put that quote, that where quote. It's very hard to, like, really, you know, articulate. Sometimes you have a problem with the juror, or there's something about that person. And that's why the standard's clearly erroneous, because the judge may see that also. But it's up to the prosecutor to make that decision. Now, was this the cleanest Batson hearing we've ever seen? No. You know, there were some, you know, mistakes made by the prosecutor. But, again, as she said, I'm an African-American, too. I'm not, you know, I would never do that. That was part of her discussion in the Batson hearing. Should we consider that as part of this situation, although it's never mentioned as an issue in any of the actual cases, because we may not know that in most cases. Here, we know that. Yeah, I think it's something there. But I still think what's more important is just the fact that, you know, she wanted to speak a little bit more about what particular denomination, how this person felt about religion, which is valid. You know, the cases say that's a valid point. She was cut off, and she just said, okay, well, you know, I'm going to cut bait on this one. And go on. And then when they went in the chambers, she did give a race-neutral reason. This is it. Well, then the defendant kind of says, well, we can go back out there and ask her questions. Well, sure, that's possible. But I think another race-neutral reason is I can't do that if I bring her back. And then she's on the jury. There is some possibility of, you know, what is this jury thinking now? Why did this person do this to me? And I think that's a completely legitimate race-neutral reason. Let's move on to self-representation. Mr. Hillbrenner had a chance to get there, but perhaps he will in his rebuttal. Why is it that the court was not incorrect here in denying him his ability to represent himself? Well, he didn't deny him. The defendant decided not to go pro se. The judge gave him a whole day to decide, to talk to his lawyers. Now, if this judge, you know, they're saying it intimidated him, I call those admonishments. I've come into this court and argued that, you know, where a defense counsel said, well, he wasn't properly admonished. Well, here the defendant was admonished. The judge was telling him exactly what could happen. Was the court wrong in admonishing him that, hey, once you go by yourself, you can't get counsel again? Was that an improper admonishment? I don't think so. I think in the real world he's telling them that there's a great possibility that you're not going to get counsel in the middle of a trial once we go. The problem is he didn't say that's a possibility or you may not be allowed to go back to representation. I mean, the quote is we're going to proceed to trial and you won't be able to go back in the middle of trial and ask for a lawyer. Do you understand that? Basically, it seemed like it was written in stone that if you proceed down this path, I'm not even going to exercise my discretion. I'm not allowing you to go back no matter what happens during the trial to go get a lawyer in the middle of trial. I mean, that admonishment is not necessarily correct, is it? I wouldn't say it's entirely correct, but I think in the real world, in trials that I've seen, that has happened most of the time, the judges will not appoint somebody in the middle of the trial. I think he's telling them where he's leaning. I wouldn't say it's the greatest admonishment, but the fact is, is that he also told them, you know, the defendant said, hey, I have a, I'm thinking of representing myself. And he, you know, he doesn't know for sure because the weekend before defense counsel and he were in jail and they had this discussion and they thought everything was okay. This was a surprise to defense counsel. So I think the judge might have made a mistake saying something that strict, but the fact is, is they were ready to go to trial. The judge was probably a little bit. This defendant in this particular case did a number of things. If you read the record to prologue his trial, I think maybe it was more of an emotional statement than anything. But the fact is, he told him, you have an absolute right to represent yourself. The defendant asked the court, well, what would you suggest? He says, well, I can't suggest anything. This is totally up to you. You know, and that's when he said, you know, but I am going to let you know that if you're doing this mid-trial, you know, and you decide you want an attorney, you're probably not, well, or you're not going to get one. What about standby counsel? They had talked about the defense counsel said, if you're going to, you know, have me on standby counsel, I don't think I can do it in three weeks or whatever. And I think there wasn't a decision really made on that. But the judge wanted the defendant to go talk to his lawyers, take a day to think about it, and then come back. And the defendant decided. And we were about three weeks out from the trial. After so many delays that it was, you know, it became the fact that I think it was, you know, one of the last, the case longest on the call. So, again, it wasn't perfect, but certainly in all these cases, justice was served. There was no prejudice to the defendant. Again, he had good counsel. He had an adequate defense. Briefly, one act, one crime. In my brief, I just state that, you know, all those extra convictions have to be vacant. Yes, thank you. Any questions? No. Thank you, ma'am. Thank you. Mr. Hildebrand, come on back up. Well, to touch briefly on this Batson issue, opposing counsel said that there's things like, you know, body language and these other things that we don't know about. That's why, you know, the prosecutor is supposed to state why I'm dismissing this, because the body language indicated that she was resentful of the state or whatever those reasons are. And the Batson decision is supposed to be made on what the prosecutor says. Well, he was arguing that in the context of the juror who was excused versus the other juror, LaChance, and saying that LaChance apparently was shy or something of that nature, whereas if somebody is religious and somewhat, you know, forceful, and then someone is equally religious but very shy, an attorney may say, you know what, I can live with the religion because he or she may not be very forceful and may not exert his or her will in the jury room. I mean, that's something to consider, isn't it? And that's what Wiley says. Wiley says that's why we don't really compare the jurors that easily. Well, Wiley says that you have to look at the reasons that the prosecutor gave and then go from there. Well, didn't the prosecutor in this case say, for the record, our concerns were not of her race anyway whatsoever. It was with regards to her religious convictions. Actually, that is kind of what the prosecutor, I mean, that's basically the reason why the prosecutor dismissed her, because they wanted to delve into this more, but they didn't, and they could have. And even after they dismissed the juror, why is it all of a sudden she's, you know, forever prejudiced against the state? And the state was, she's no longer going to favor us. Well, they don't have a right to a juror that favors them. And why couldn't they bring her back out and continue with the court hearing? Well, isn't that a race no to a reason not to bring her back, though? I mean, if you excuse a juror and say, goodbye, we don't want you, and the juror's walking out the door and everybody says, wait a second, and then you go in the back and then you come back out and then start questioning the juror again and then maybe keep the juror, as an attorney, a trial attorney, you don't think that you would have in the back of your mind that that juror may hold that against you and against the state? If that were in the back of the prosecutor's mind, the prosecutor could have asked her that. Are you going to hold that against us, that we excuse you? No, but my question to you is, isn't that a race-neutral reason not to question her anymore? I mean, the issue here is whether it's pretextual or race-neutral. Is that a race-neutral reason not to question her again? Under a Batson evaluation, that's not an excuse for excusing anybody at all, because that was not the reason they excused her. That's a reason why they weren't willing to bring her back in. That's a completely different issue. Well, I understand it's different. I understand we're looking at the reason for excusal and all that, but then we've delved down this path of, why didn't you bring her back and ask those questions? So my question to you is, factoring that into this whole Batson analysis, is that race-neutral or isn't it? Well, then that would be like saying that the prosecutor created this situation by its own conduct, by dismissing the juror in front of herself, right in front of Barnett, and then claiming that it's now prejudiced by its own conduct by doing that. And so isn't that race-neutral? Well, that kind of like skips over the whole Batson thing, saying what we did gave us that was unsolicited, unprovoked, and not a legitimate reason. We do that on our own, and so now we have a race-neutral. That gives us the race-neutral reason for dismissing. I mean, if that were so, prosecution could just keep asking questions until there's an objection, and then say, oh, we dismiss. And then say, well, now we have a race-neutral because we can't go back. You know, if the judge isn't going to accept it, now our race-neutral explanation, now we can't go back because obviously she's going to be prejudiced against us. I mean, that's just an end run around Batson. It shouldn't be accepted. So the prosecutor didn't say, I made a mistake. She just said that once I dismissed her, or once she was dismissed, I felt uncomfortable bringing her back because of the way it would look, how she might feel. What else do you want this prosecutor to say? She gave reasons. You don't like the reasons, but what reasons should she have given, I guess, in your mind? I would expect the prosecutor to say nothing more because I would find that, if I were the judge, to be pretextual. This is an African-American prosecutor who now is in a situation she created herself. She said, you know, I don't want to put her in this situation. What is pretextual about that? Well, first, her actual explanation was she thought that she can't bring the juror back because the juror wouldn't be in favor of the state. That's what she said. Well, if she is going to be uncomfortable, it would be uncomfortable. Again, maybe she's not very articulate, but it would be uncomfortable to bring a juror back after you say, see ya. We don't even know where she was at the time. Do we have to go back to her home parish and get her or wherever she is? Is she still in the courthouse? That's just, if you've never tried a jury, that's an issue. I mean, why would you do that? Well, because you're going beyond where we should really be looking at. What we should really be looking at, why did she dismiss her? Isn't that the question? I thought we'd answered that, and that's where we were, and you just say that's pretextual, and the court made up its own reason. Right. Right. It's pretextual. She said she was concerned about the religious beliefs. The judge said that the veneer man was deeply rooted in her religious positions. How is that different? That's exactly why it is pretextual, because she said she was concerned about certain unidentified. She never identified these religious prejudices. She said that, that she was concerned about those. She could have asked. That's why it's pretextual, because she dismissed the juror without even asking the juror that. That's what makes it pretextual. I asked counsel the same question, so I'll ask you. Is there any case disregarding the umbrella of Batson that says when a judge makes this decision, it has to parrot the language of either of the parties in its decision so that we know it looked at A, B, C, and D and didn't consider anything else? I would never say that the judge has to parrot exactly that. I'm asking if there's a case that's out there that you have found. Well, I think Batson specifically states that when this issue is decided, the court is to look at the arguments that the state made. And the court didn't in this case? No. Okay. And the arguments that the defendant made. And the court didn't do that either? No, the court took into consideration the defendant's arguments, but it didn't evaluate exactly what I'm talking about here, is the dismissal of the juror for no reason whatsoever. We're running out of time. Your timing has gone off, but I want to give you the opportunity to just quickly discuss the self-representation issue. The standard of review at this level is abuse of discretion. Can we agree on that? I think I cited de novo because it's a constitutional issue. You like that standard of review, don't you? Yes, I love it. Let's talk about briefly why do you believe the court was wrong in stating to him, hey, look, once you go there, you can't go back? Because that's not true. And that is specifically why the defendant didn't exercise his rights. But doesn't the court have discretion in not giving counsel in the middle of the trial? I mean, that's within the discretion of the trial court whether or not they ever give, allow the defendant self-representation, isn't it? Yes. Okay. So how did the court abuse their discretion in this particular case? And why did the defendant not knowingly involuntarily waive that right? Why did the fact that the court gave him a day go and talk to his attorney? Because the judge told him that you are not going to get an attorney appointed ever. So based upon that improper advisal. Yes. And, in fact, he stated that is why I didn't exercise. Because clearly he wanted to do it. And this is the Sixth Amendment right to counsel. The right to self-representation is on the same footing as the right to counsel. And I think it's really this court shouldn't take note that the state did not cite one single case in its argument on this issue. But makes the allegation that the defendant has to show prejudice. Well, the state never cited anything for that. And it would be hard pressed to come up with a case since it's a structural error. Are you saying that the trial court told this defendant, if you're thinking of representing yourself. And I allow you to do that. I will never allow you to have counsel again in this case. That's what he basically told the defendant. And that's how the defendant interpreted what the judge said. Well, what the judge said was, and I'll get up to Mr. Bernhardt. We're going to proceed to trial. And you won't be able to go back in the middle of trial and ask for a lawyer. Do you understand that? Yes. That's right. You didn't say you're never going to be able to have an attorney during any of the proceedings, post trial, before trial, whatever. He said in the middle of trial, I'm not going to make these jurors sit and wait or dismiss them and bring a whole new panel in because now you want an attorney. Right. And that's certainly a reasonable admonishment that the defendant should have in his mind, isn't it? I would have to say it's totally unreasonable. Oh, it is? Because we would then, we would have to require the defendant then to come to the conclusion that, okay, as long as I don't ask in the middle of the trial, if the trial is 51% over, then I can ask for an attorney. No. I mean, once the judge tells him, you can't ask for an attorney during trial. In the middle of trial. In the middle of trial. I mean, what is the middle of trial? In other words, during the trial, you can't ask. That's what that means. It just, that's how people use that. You can't ask. If you can't ask, you're not getting one, period. So that's the way he interpreted it, and I think that's a rational, reasonable way to interpret that, that I can't ask for one. Well, how many litigants in your experience are told, don't do that again, and they do it again? What prevented him from asking, other than, maybe he knew the judge's answer, but he still couldn't ask? Sure, but he didn't want to go pro se, knowing that if this turns out to be a real bad problem for him, that he's stuck. He's not going to take, he's not going to. Two murders aren't a bad problem? I mean, two murders up front are a bad problem, aren't they? That's right. That's right, but it's still his constitutional right to do that. Anything further? No. Thank you. Mr. Legrand, thank you. Counsel, thank you so much for your arguments. The court will be in a brief recess before we start the next case. We will take a look at the case, and the decision will be rendered in due course. Thank you. Have a great day.